Good afternoon, members of the court. May it please the court. The striking difference between this case and the cases you generally hear is the extensive presence of the cartels and the abuse of the cartels in a symbiotic relationship with the what we believe is that there is a sufficient common characteristics of the two individuals, the father, the son, and that both present the risk of being persecuted and killed in Mexico. And this is an innate, unchangeable because what differentiates this case from the other cases and makes it more like the Cordova v. Holder case is that these people have land that the cartels want. It is not unlike, your honors, to the case of the Mormons who recently were killed in the state of Chihuahua. The difference is that those people were binationals. They had U.S. citizenship and Mexican citizenship. But the cartels have decided that they wanted that land, the Mormon land, on the upper sierra of the state of Chihuahua. Can I interrupt for just a minute? We basically understand the narrative given by the son and by the father. What I'm interested in is what is the protected ground here? Is it a social group of family? Is it a would-be social group of landowners? What are we talking about? Because not only do we have to have some threat of harm, if we're talking about withholding, we've got to find some connection, some nexus to a protected group. So what's the protected ground here? It's both, your honor. It is the family, a family unit that owns a particular piece of land that is desired by the cartels. And as such, this particular piece of land is 3,400 acres of land that contains precious metals. And so the characteristics of this particular group are that there are very few people like them along the border, Judge, but all of them are persecuted and essentially kill some of its members and tortured by the cartel members with the aid of the police. Now, in this case, at least according to the testimony of the son and the evidence presented there and the decision of this IJ and then the BIA, there's an adverse credibility finding. On the other hand, the BIA assumes truth. So for the purposes of my question, I will assume the truth, even though the IJ entered an adverse credibility finding. But the BIA, even assuming truthful testimony, is unwilling to hold that there's been a showing that the killing of the brother and of the uncles was connected to this land dispute. That is to say, no nexus to family if that's the family nexus. What do I do with that? Well, there was testimony during the proceeding in the trial court that showed that the cartel was killed. And they were accompanied by the police. And after the brothers disappeared, the brothers came and visited the family on September 16, 2009. And they came over to the home and told them the same thing what happened to you. Three days later, the two brothers were found dead. So there is that specific threat being made by the cartel to the family, stating that they're responsible for the death of the family members, specifically because of the reluctance to sell the land to the cartel for a very ridiculous amount of $50,000 when the land is worth $10 million or more. I hope that answers your question, Your Honor. Thank you. Thank you. So what I was saying, Judge, is that this case is more like the Gorgova versus Holder Ninth Circuit case, 726 Federal 3rd, 1106. And that the landowners are targeted for persecution and the families are distinguished landowners. That is, by distinguished, I mean, people that can easily be identified by the community as owners of land. They have a particular, the ownership of the land is particularly tied to a treasure, in this case, minerals, or it is pretty close to the border, so it can be used for purposes of smuggling into the United States. So that's the situation. It is not an amorphous group. And I think it is a distinct group within the society. Because of those reasons, Your Honor, I believe that the case comes within the particular group. Furthermore, Judges, in this particular case, we have the protection under CAT, the Convention Against Torture. We have specific instances of the police intervention directly with the cartel, and abusing the family, pointing weapons at the family, beating up the family, and there is no interference by the police. The police are directly involved, on the other hand, rather than interfere with the cartel's abuse. Counsel, what do we do with the fact that there are family members that are still in Mexico that seem to be doing fine? Well, there are no immediate family members that have any capacity to have ownership. The only family member is Victor, who was in the present case, who was sent back to Mexico, but is in hiding because of the threat of being killed. So, the rest of the family members are not directly tied to the immediate family in this case, the people who are in Mexico. All of them are in the United States. The husband, the mom, and the daughter are in the United States. And Victor, who was in this case, was sent back to Mexico, and we filed the appeal. That's what we're hearing this appeal on. So, I have a clarifying question about that, because I thought the theory was that you were defining the proposed legal group as family, because even though there were family members who might not have an ownership in the property, they were being targeted, basically, for leverage against the father, who, in the other case. So, if that's the theory, that family members were being targeted, not because they had direct ownership, but because they were being used as leverage against the person who does own the land, I guess I don't understand the distinction that you're trying to make between immediate family members and non-immediate family members. Well, Your Honor, what happened is that the immediate family members, they all came to the United States. Shortly after they arrived in the United States, within a week or so, the land was leased to a Mexican conglomerate for 10 years. And so, that land is essentially out of the reach of the cartel at this point. But there had been continuous threat that if the father returns to Mexico, or if the children return to Mexico, they will be killed. And those threats were made in 2017. And it was 2017 before or after the land was leased? It was after the land was leased, Your Honor. The land was leased in 2011, shortly after the parties came to the United States, mom, dad. Okay, this question may be that the lease was for 20 years rather than 10. You just said 10. Which is it? I may be mistaken, Your Honor, but my understanding is that it is 10 years. Okay, I read that it was 20. And that may make a difference. That is to say, if it's only 10 years and it was leased in 2011, it's coming off lease, which then might mean that we've got a more immediate threat because the owner or owners, if it's passed to some degree to the kids, as the son testified, well, it's now up for grabs again. Okay, well, I can find out. We've taken you to the end of your time, we will give you a chance to respond. Let's hear from the government. May it please the court? No, Seymour, on behalf of the Attorney General. Petitioner failed to establish any nexus between the claim to harm and a protective ground, and he is therefore ineligible for withholding of removal. In addition, petitioner's speculative torture claim is insufficient to meet his burden of proof for protection under CAP. As discussed, petitioner's claim is largely based on a family-based particular social group. But even if this court is to assume that his testimony is credible, and that particular social group he's relying on is cognizable, the claimed harm is still more akin to private acts of violence. And the record reflects that the cartel is motivated by property interests, or more precisely desire to own his father's land, and not that there is some kind of animus against the family per se. Because of that, petitioner failed to meet to establish a causal connection between his family and any alleged harm, which is supported. So for withholding, he only needs to show that the membership in the group is a reason for persecution. It doesn't have to be the central reason. And if we accept his testimony as true, as the board did, why doesn't his own account of the people attacking members of his family, and he says it was because of this land dispute, why doesn't his testimony, if accepted, establish that it was a reason for what happened? Because, your honor, you are correct that it only needs to be a reason. But here, the record doesn't compel the conclusion that a protected ground is any reason. So to your point about his taking his testimony as true, that he and other members of his family were targeted based on their family membership, that's not borne out by the record. Because instead, the record reflects that the cartel wanted to, say, intimidate his father to sell the land, and so their motivation at bottom was criminal. It was a pecuniary gain that they wanted, and it was nothing to do with the family per se. And that is why it's not even a reason for withholding. Well, I guess I'm not totally sure I follow the distinction. I mean, the ultimate motive might be financial, or economic, but if an economic motive leads the group of persecutors to decide that they're going to target the members of this family, and if you ask them, sort of in a larger sense, why are you doing what you're doing, they would say it's to get money. But if you ask them, why are you targeting Victor Acosta-Peralta as opposed to some other person, they would say, well, because he's in the family of the people of the land that we want. So why isn't family part of their reason in that sense? Because, Your Honor, the logical conclusion to that reading of the record would be that the family members of anybody with a claim for withholding or removal would be almost automatically entitled to protection, which is not what the law is designed to do. Instead, each petitioner has to nexus to a protected ground. And here, although a petitioner claims that he was harassed in the past by members of the cartel because of his family membership, there's really insufficient evidence to support that. And similarly, as discussed already, the- Can I stop you right there when you say there's no insufficient evidence to support that? Even if we put to one side for the time being, the death of his brother and the death of his uncle, we have uncontradicted and believed testimony, including his own, that the cartel members have threatened the aunt when she comes back and says everybody's going to get killed unless you hand over the land. I mean, there is evidence in the record that is uncontradicted, that we have serious threats to the family designed to be leveraged to sell the land. Correct? There is evidence of that, Your Honor. But it doesn't automatically follow that if multiple family members are harassed, that there is a protected social group at play. It doesn't necessarily establish a nexus for the purposes of withholding or removal. And- But that then goes back to Judge Miller's question. Why- It's obvious that if they target Joe Jones and say, hey, I'm getting you because I want the father to sell the land, that's crazy. The only reason they're going after these people is because they're members of the family and that they will operate then as leverage on the people who are- Maybe just the father, but maybe also the children who have the power to convey the land. And there's no reason to go after a stranger. They only go after the family members, which is Judge Miller's point. And I'm not sure I fully understand your answer as to why that's not a connection. Because, Your Honor, I'll try to rephrase it. Because that is- Although that might be one permissible reading of the record, the record doesn't compel that conclusion. The record shows that the cartel is going after anyone in the family as a means to an end to get the land. And thus, at bottom, the nexus would be to a criminal motive or pecuniary gain. It would not be to family membership, which distinguishes this case from other cases where family membership was shown to be cognizable and a nexus in and of itself. The government is well aware that family membership can be a protected social- a protected ground and a particular social group. It's just not the case in this case. Well, in what case could family be a protected ground then? If not this one. In what case? If there's more- If there were to be more evidence in the record that the motivation, which- Because nexus, it's crucial to establish the motivation. If this- In a case where a petitioner would be able to establish that the motivation was pure family membership and based on the family per se and that the cartel had some kind of animus against that family, that would be an example of a case where family membership could qualify as opposed to this case where the evidence instead shows that it's all about the land. And that's borne out from the testimony as well. The aunt mentions that it's because of the ranch. It's all because of the ranch. And opposing counsel in his brief also suggested and stated that it was because of the land. And the agency, even though petitioner did not articulate a land-based particular social group, took the steps to say it is neither land nor family. It's nothing that is protected by the statute, which is why it's not even a reason for the purposes of withholding of removal. Now, at the time the BIA wrote its decision, matter of LEA was up in front of the attorney general. And you cited matter of LEA kind of in kind of glancingly in your brief, but you clearly recognize that it's there and so on. And as I read matter of LEA by the attorney general, there's some nuance in terms of what family as a social group means. Would it be appropriate for us to send this back to give the agency an opportunity to apply matter of LEA to this case? The government does not think so, your honor, given that here the agency, although it found that the particular social group was not cognizable, it then went on to do an alternative finding to say that it was cognizable and there was still no nexus. So even were this court to send it back for there to be an LEA analysis, the ultimate result would be the same. That the nexus is what is dispositive in this case here and what would still be dispositive under LEA. So why is there no, assuming that this family is a protected group, why is there no nexus? I mean, there's a very clear connection. If I don't have to use the fancy word nexus, but I can just use the word connection. There clearly is a connection. The only reason they're going after these people is that they are family members. And presumably the father is going to be very concerned about threatened harm to his family members, whereas he couldn't care less about family members, about threatened harm to Joe Jones. So I don't understand why you say there's no nexus. If you say that there is, that the family is a protected social group. Because it doesn't, because the fact that it might be a factor that is taken into consideration doesn't mean that it's the motivation for the harm suffered or feared. And that would be the government's main point, your honor, is that the petitioner failed to establish that family in and of itself, that his kinship was the reason that he was targeted and harmed or would be in future. Instead, the record shows that it's greed. It's a desire for the land. And that is the at bottom reason for anything. Well, but now you're saying the reason, whereas of course, yeah, yeah, yeah. Well, obviously wanting the land is a reason, but going after the family members in order to get the land is a reason. I mean, we're kind of stuck here and I understand the government's problem. I mean, I'm having the same problem too. I mean, what degree of connection is there to family as a protected social group? It's possible that if any time I want something, I'm a criminal, I'm trying to get money out of somebody. We know that being rich in Mexico is not a protected ground, even though people get suffered because they're rich. I mean, there are various extortion attempts and so on. But as soon as I go after the wife saying, give me the money, does that turn it into a family group case? Well, if that turns into a family group case, we got an awful lot of family group cases. I get that. Correct, your honor. The government agrees with that. And that would be. Well, you agree with that. On the other hand, this one's not just I want money and I'm going after the wife. I want this is we want the land and we're going after a lot of the family members. Sure. But again, they're going after it, even if they are going after a lot of family members, your honor, they're still doing it for the land. They're not doing it because they're members of the family. And so while that might be a way to get what they want, it's not the reason they are acting. And that you went back to the reason. I apologize. I apologize. I mean, the main motivation that the nexus for their actions. That argument might make sense to me if each person that was being targeted had an ownership interest. And so that person could directly help them accomplish the goal of getting the land. But that isn't the case here. Correct, your honor. And so I'm not following the argument, I guess, that you're making, because that's not the case here, because it's not just that they want the land. There is a reason to target these people because of their family status. I at the risk of repeating myself, I understand that they I understand that they don't have ownership in the land, at least as of yet. But it's still an intimidation factor. It's still a criminal motivation, and it is not because of their family membership. And the agency considered both family membership and land ownership and found that there wasn't a nexus to any protected grounds. And so while the record could may be able to be read that it is family membership, the record doesn't compel that conclusion. And therefore it doesn't desert the agency's decision is supported by substantial evidence and should not be reversed. Can I ask you, I know you're over time, but can I ask you just out of curiosity, a general question about the board's procedures in these kinds of cases, we have these two related cases, and they've been argued somewhat differently by petitioner below. But we have these different kinds of analysis in the in the two board decisions. Does the board have some procedure in place to try to group related cases and make sure that they're resolved consistently? They do all the proceedings are ongoing is my understanding, your honor. But here these are separate and distinct proceedings. And so there are before different immigration judges and therefore brought up differently. Had they been consolidated at the agency level, then they would have the decision would have been addressing both. Okay, this is this is a hypothetical and maybe be sort of outside your expertise that has to do more with board procedures than with the DOJ procedures. But if and this is an if, if we were to remand this case, and remand the father's case, would the BIA then treat them together? I believe that they would only upon motion is my understanding. Okay, or maybe upon suggestion by us. I'm sure that would also have influence. And I understand you can't speak to the BIA. But I have the same essential question that Judge Miller is. So obviously, these are closely related cases. And it would be interesting to hear your thoughts on that. Of course. Now, we took you over time. Would you like two minutes, Mr. Romo? You're still muted, Mr. Romo. I would like to, if you permit me, Judge, just address the issue of the ownership of land, and the differences between that and the, and the persecution of the individuals. And I think, Judge, it is important to address the cultural differences in this particular case. You have a group of family who owns a particular piece of land, there is an extensive piece of metals were found in them. The land increased substantially in value. But when the cartel comes over and says, you give me your land for $50,000, which is a ridiculous amount, or I will do something to you. Essentially, what they're saying is that they have to give up something that is culturally innate within them. And that is the difference, Judge, from, from I think, other matters, because this is a patrimony that the family had. And it is a patrimony that will be left to the children, so that they can sustain themselves in the future with the land. So to say that there is a difference between the motive of the cartel, I want the land. And therefore, if you don't give it to me, I will do something that doesn't involve a particular social group. I think it is it's not the correct interpretation of the law. Okay, no, no further questions. Thank you. Thank you. The son's case, Victor Acosta Peralta now submitted for decision.
judges: W. Fletcher, Miller, Hunsaker